390 P.2d 269

**Gregory C. ROMERO, Plaintiff-Appellee,**

**v.**

**Theo B. KENDRICKS, Saki Karavas d/b/a La Fonda Hotel, La Fonda Hotel and Saki Karavas, Defendants-Appellants.**

**No. 7296.**

Supreme Court of New Mexico.

Jan. 6, 1964.

Rehearing Denied March 31, 1964.

Even though other serious problems are raised, the question of contributory negligence as a matter of law is decisive. In this connection, it must be kept in mind that we are not concerned with the right of recovery between appellee and his actual assailant, the non-appealing defendant, but only with the duty owed to a bar patron by the owner and the operator.

For ease in understanding, the parties will be referred to by their surnames—the appellee-plaintiff as Romero; the assailant-defendant as Ambrose; the appellants-defendants, the bar operator as Kendricks, and the bar owner as Karavas.

Patricio S. Sanchez, Santa Fe, Sterling F. Black, Los Alamos, for appellee.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellant Saki Karavas.

Modrall, Seymour, Sperling, Roehl & Harris, Leland S. Sedberry, Jr., Albuquerque, for appellant Theo B. Kendricks.

CARMODY, Justice.

Appellee, following a jury trial, recovered judgment against his actual assailant and also against the bar operator and the claimed owner of a bar. Only the operator and the bar owner appeal.

Romero, a salesman from out of town, after having spent some time in another bar, went to La Fonda Bar in Taos on a cold night in January, seeking, it seemed, to engage in such pleasurable diversions as are customary in that type of place. He was to be badly disappointed, for rather than conviviality and amusement, the events of the evening were to cause him, in addition to other difficulties, great physical pain and the dubious pleasure of long hospitalization. Upon entering the bar, Romero first ordered a beer from the barmaid, one Jane Gavas, and then went in the direction of the restroom. On the way, he passed the nickelodeon, put some money in it, and told Mrs. Ambrose, who was sitting with her husband, that she could select the music she wished. None of the parties had known

each other before. Romero then went to the restroom and was followed by Ambrose, who made some very harsh remarks concerning Romero's offer to Ambrose's wife. The parties then went back into the bar and the words grew considerably more heated, so much so that the barmaid threatened to call the police if the men did not behave themselves. Somehow, she was prevailed upon not to do so, and Romero took a seat at the bar, some distance from where Ambrose and his wife were seated. Thereafter, a new argument apparently started, originating in Romero's offer to match for beer. The argument waxed hot, culminating in Ambrose calling Romero an "S.O.B." Romero then got up from his bar stool and went toward where the other man was. Romero testified, "I was going to defend my honor." Whether Romero went all the distance to Ambrose, or whether the parties met somewhere in-between, is somewhat in conflict, but, in any event, the men began scuffling. Romero initially grabbed Ambrose by the lapels and subsequently pushed him against the wall. It was at this time that Ambrose stabbed Romero several times with a knife. In the meantime, when the scuffle started, the barmaid ran out of the bar to advise her employer, Kendricks, who was in another bar in the same building, but some distance away. When Kendricks shortly arrived, the fight was over and Romero, with several cuts principally about the abdomen, was standing just

inside or outside the door. However, no one noticed any blood. Kendricks refused to call an ambulance, and told Romero to go to the police station, about a block away, if he wanted help, because it could be obtained more speedily there. Romero started, but when about halfway, fell in the snow, where he remained until taken to the hospital by the officers who found him shortly after he fell.

Romero urges that both Kendricks and Karavas failed in their duty to protect him from the harmful acts of third persons, and, further, as to Kendricks, that there was negligent failure to render aid after the injury. In seeking to bolster his contention, Romero points to certain evidence which indicates that both of the parties displayed knives a short time prior to the unfortunate scuffle. However, this testimony avails him nothing, because a careful examination of the entire transcript fails to disclose any knowledge on the part of the barmaid that she ever saw the knives. It is also maintained that the argument between the two men should have been notice to the barmaid of the inherent danger in the situation. Nevertheless, here again, it is not shown that the argument, after it initially quieted down, was of such a consequence to alert the barmaid. Actually, the only other people in the bar, other than Romero, Ambrose and Ambrose's wife, were two female customers, and their attention was not attracted to anything oc-

·curring during the argument, they apparently not even being conscious of the same and only observing the final scuffle. The barmaid did not testify.

■ Thus, neither the testimony with respect to the knives, nor the argument preceding the final scuffle, can have any bearing on the liability of Kendricks and Karavas, there being no evidence of knowledge on the part of the agent of the danger involved. This is, of course, assuming, for this purpose, that the barmaid was the agent of both Karavas and Kendricks, although it is seriously contended by Karavas that he had no interest in the bar at the time of the occurrence. We do not reach this point, however, because of our determination that Romero's right to recover is barred as a matter of law.

■ We first take note of Coca v. Arceo, 1962, 71 N.M. 186, 376 P.2d 970, in which we defined the liability of an innkeeper for negligence. We there said:

"* * * Naturally, an innkeeper is not and cannot be an insurer of a guest or patron against personal injuries inflicted by another person on the premises, other than his servants or agents. Nevertheless, the proprietor of a place of business who holds it out to the public for entry for his business purposes, is subject to liability to guests who are upon the premises and who are injured by the harmful acts of third persons if, by the exercise of reasonable care, the proprietor could have discovered that such acts were being done or about to be done, and could have protected against the injury by controlling the conduct of the other patron. * * *"

Naturally, the innkeeper, to avoid liability, must use reasonable care, but to allow Romero to recover in this case would, in effect, be a determination that the bar owner must go further and protect a patron, even against his own misconduct.

■■ Even in the light most favorable to Romero, as we consider the testimony, it cannot be denied that either he was the actual aggressor in the final scuffle, or, at the least, was voluntarily going toward Ambrose to engage in mutual combat. Mere words alone do not justify an assault, and the record does not show any overt act or hostile demonstration on the part of Ambrose such as would have given Romero reasonable ground to have supposed himself to be in imminent danger. Compare Faubion v. Tucker, 1954, 58 N.M. 303, 270 P.2d 713. As is pointed out in the briefs, there appears to be no case among the hundreds of innkeeper cases in the books which allowed recovery under the circumstances here present. Actually, most of the cases relied upon by Romero are not analogous to the facts here, either because

they involved proceedings under dram-shop statutes, or, even if not, were cases where there was no action by the plaintiff which brought about his injury. Usually, the cases involved an innocent bystander. These cases are Tyrrell v. Quigley, 1946, 186 Misc. 972, 60 N.Y.S.2d 821; Rappaport v. Nichols, 1959, 31 N.J. 188, 156 A.2d 1, 75 A.L.R.2d 821; Waynick v. Chicago's Last Department Store (7th Cir. 1959), 269 F.2d 322; Schelin v. Goldberg, 1958, 188 Pa.Super. 341, 146 A.2d 648; Priewe v. Bartz, 1957, 249 Minn. 488, 83 N.W.2d 116, 70 A.L.R.2d 621. We have examined them and find they are readily distinguishable.

Reliance is also placed upon Coca v. Arceo, supra, but suffice it to say that the only question decided there was the pro-priety of summary judgment. Even though the facts were vastly different in that case, there was no determination as a matter of law that the plaintiff did or did not have a right to recover.

■ It should be borne in mind that we are here considering only the question of contributory negligence as a matter of law, although actually there is serious doubt whether the necessary negligence on the part of the owner or operator was shown. In this jurisdiction, we recognize that there is no duty to warn a business visitor of a danger or defect which is equally as obvious and well known to the patron as the operator of the business. See Boyce v. Brewington, 1945, 49 N.M. 107, 158 P.2d 124, 163 A.L.R. 583; and Dominguez v. Southwestern Greyhound Lines, 1945, 49 N.M. 13, 155 P.2d 138.

In the instant case, the danger in re-sorting to physical encounter was certain-ly as well known to Romero as it was to the operators, if not more so. Compare Greg-orc v. Londoff Cocktail Lounge (Mo.1958), 314 S.W.2d 704, wherein the plaintiff ob-served a patron holding a gun for between fifteen and twenty minutes and the court determined that the situation of danger and potential physical harm must have been known to the plaintiff and that he could have left before the shooting—that the "plaintiff was not entitled to be warned of that which he already knew."

Even more in point, and apparently on facts more favorable to the plaintiff than we have in the present instance, is Wither-spoon v. Owen, 1959, 251 N.C. 169, 110 S.E. 2d 830, wherein the court held that the patron had a duty not to needlessly expose himself to danger, and that if the conditions were such as to warn the defendant that the plaintiff might be assaulted, these same con-ditions gave equal warning to the plaintiff. Compare Brown v. Lambert (La.App.1954), 71 So.2d 410, wherein the court affirmed the action of the factfinder holding that the plaintiff had failed to satisfy the bur-den of proving that he was without fault in starting a fight.

One other matter that requires our brief mention relates to Romero's contention that Kendricks negligently failed to render aid. It is to be noted that immediately upon the starting of the scuffle, the barmaid left the bar to advise her employer and so did not see the actual fight. Neither she nor Kendricks had any knowledge of what had occurred. Kendricks saw Romero at the door, did not observe any bleeding, and it was apparently his best judgment that if Romero needed aid, the quickest way he could obtain it would be at the police station. Although Romero would now contend that Kendricks was only interested in getting back to his bar, we do not see that such an assertion is warranted. Romero would have us draw other inferences from the testimony of Kendricks, but we decline to do so, and are of the view that there was no legal duty shown under the facts in evidence requiring Kendricks to take any other action than he did, particularly when there was no showing that Kendricks had any knowledge of the seriousness of the man's condition. In this connection, it should be noted that even the policeman, when he picked up Romero after he had fallen in the snow, did not at first observe any blood and presumed that the man was merely drunk. That there could be an implication that Kendricks had superior powers of observation or greater knowledge of Romero's condition than the officer would be sheer conjecture.

It is our considered judgment, after a careful and painstaking review of the entire record, that, even though it might in some way be considered that either Kendricks or Karavas, or both, were negligent (and this is subject to considerable doubt), Romero, by his contributory negligence, is barred from recovery as against them. We would observe, although it has no effect on our decision, that the record discloses that Ambrose was tried and found not guilty of a criminal charge of assault with a deadly weapon.

In our view, we do not believe that the minds of reasonable men could truly reach any conclusion other than that Romero's actions in leaving his seat and going toward Ambrose to engage in a scuffle was negligence contributing proximately to cause his injury. Although we in no sense condone the action taken by Ambrose, it is quite apparent that the injury would not have been received if Romero had acted as a reasonable man and either broken off the argument after its original inception or had left the bar, which he had every opportunity to do. The proximate cause of the injury was his own misconduct, concurring with that of Ambrose, and not any claimed negligence on the part of Kendricks or Karavas. The trial court erred in not ruling that Romero was contributorily negligent as a matter of law, and, therefore, should have taken the case from the jury with respect to the two named defendants. See

Sandoval v. Brown, 1959, 66 N.M. 235, 346 P.2d 551, in which most of our earlier cases are examined thoroughly and where the rule as to when contributory negligence is to be determined as a matter of law, not fact, is clearly set forth.

The case as to Kendricks and Karavas will be reversed and remanded to the trial court, with direction to set aside the judgment except as to Ambrose, and to enter its order dismissing the cause as to all other defendants. It is so ordered.

CHAVEZ and MOISE JJ., concur.