Jacobs, Appellant, *v.* Mutual Mortgage and Investment Co., Appellee.

(No. 39557—Decided April 20, 1966.)

*Messrs. Dudnick, Komito, Nurenberg, Plevin, Dempsey & Jacobson* and *Mr. Robert M. Dudnick*, for appellant.

*Messrs. Arter, Hadden, Wycoff & Van Duzer* and *Mr. Robert Weh*, for appellee.

SCHNEIDER, J. In this appeal, there is no dispute that plaintiff was injured, or that the proximate cause of her injuries was the negligence of the person in possession and control of the premises in failing to maintain the carpeting in the hallway in a reasonably safe condition so that such person is responsible at law to the plaintiff for her injuries. The single question, therefore, is: Was the defendant in sufficient control of the premises so as to fix liability upon it?

The answer is to be found solely within the terms of the contract between defendant and the owner. The conclusion of

the Court of Appeals that that contract did not invest the defendant with exclusive control is not without merit. However, we reach the opposite result. We are persuaded that the contract has every indicia of a lease and that the defendant is in the posture of a lessee with respect to the events giving rise to this action.

It accepted "exclusive management and control of" the premises for a period determinable by the owner only "in the event of a bona fide sale of, and the recording of a deed of transfer of title to the premises." The most compelling feature of the contract leading to our conclusion is that, in addition to the usual authority of a leasing agent, defendant accepted power and authority "*to make and execute leases*" at stipulated rentals with *tenants selected by it* and "to prosecute any and *all* legal proceedings for the recovery of *possession* of any part of the leased premises and/or for *the recovery of rentals* due therefor and to settle, compromise and adjust suits, claims and disputes arising out of such matters." (Emphasis supplied.)

Defendant also had authority "to hire, manage, control, pay and discharge all managers, janitors and other employees." There is no indication that the owner retained any right of control or direction over any of these important activities. Defendant had, as Judge Taft (now Chief Justice) said in *Cooper v. Roose*, 151 Ohio St. 316, at page 323, "* * * the power and right to use the premises and to admit people to the premises and exclude them from the premises. Such rights are attributes of ownership. They are the very attributes of ownership which form the basis of the duty to use ordinary care as to the condition of the premises. * * *" See, also, *Davies, a Minor,* v. *Kelley*, 112 Ohio St. 122.

Furthermore, it is not urged that the defective carpeting involved an emergency repair "necessary and incident to the negotiation of a lease, or the rental of any part of the premises," or a permanent replacement or improvement. The defect here called for an ordinary repair and defendant had full power and authority to make "all ordinary repairs" without any financial restriction. Under paragraph 2 (b), if sufficient funds were not on hand to the credit of the owner, the owner was required promptly to pay the deficit on request of defendant.

Finally, defendant has advanced no substantial reason to support its contention that it had no duty to repair the carpeting. The word, "duty," is employed in the language of the contract only in paragraph 2 (c) with reference to the degree of compliance required of defendant. But duty is implicit in every feature of the arrangement, which is "instinct with obligation." Absent duty, neither party could derive any benefit therefrom. The owner's investment would not be conserved and the defendant would receive no compensation.

There are, of course, other aspects of the relationship, responsibility for which is shared by the owner and the defendant. But those responsibilities do not pertain to nor could they have affected the occurrence with which this action is concerned. And they are over-balanced by those features by which defendant possessed full power and authority as to this defect to the exclusion of the owner, that is, to admit or reject plaintiff or any other person from the hallway in which the defect occurred and completely to provide for the maintenance of that hallway in the safe condition in which it was presumably received from the owner, including the correction of that defect.

The rule that a writing will be construed most strongly against the party responsible for its language may well apply here, where both the defendant and the owner have provided each other with an arguable defense to an action against either by a third party. Justice will not be served by permitting either party to the contract to derive a procedural advantage from their contractual relationship containing elements fortuitous to both over one aggrieved by a matter concerning his tenancy or by the condition of the premises, particularly since the owner bears the final financial responsibility under an indemnity clause (paragraph 3).

The judgment of the Court of Appeals is, therefore, reversed and the cause is remanded to that court for consideration of other alleged errors not previously considered. In so doing, we disturb nothing in the law of agency or of landlord and tenant.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS and HERBERT, JJ., concur. O'NEILL and BROWN, JJ., dissent.

98

BROWN, J., dissenting. The management agreement between the owner and the defendant management company is the only evidence establishing the relationship between defendant and the property involved. The agreement clearly establishes that defendant was simply an agent of the owner and authorized to act for the owner in certain limited areas specifically detailed in the agreement. It clearly negates the contention that the defendant was in exclusive possession and control of the premises, and, hence, the management company is not liable in tort to the tenant.

Additionally, the agreement does not obligate the defendant to make any repairs whatsoever. The property management agreement merely gives defendant the "power and authority" to make certain "ordinary" repairs, and a failure to exercise a power, not a duty, does not amount to a breach of contract.

In *Ripple* v. *Mahoning National Bank* (1944), 143 Ohio St. 614, the syllabus reads as follows:

"The reservation in a lease of a suite of rooms for use as a private office, whereby control thereof is retained only 'for the purpose of repairing the same and doing of daily janitor work,' does not render the lessor liable for injuries sustained by an employee of the lessee caused by falling plaster, in the absence of authority of the lessor *to exercise control over such premises to the exclusion of any control by the lesse*e. (*Burdick* v. *Cheadle*, 26 Ohio St. 393; *Marqua* v. *Martin*, 109 Ohio St. 56; and *Berkowitz* v. *Winston*, 128 Ohio St. 611, approved and followed.)" (Emphasis added.)

*Gardner, Admx.*, v. *1111 Corporation* (1955), 286 App. Div. 110, affirmed, 1 N. Y. 2d 758, 135 N. E. 2d 55, involved a suit against a managing agent of an apartment house, for the death of an elevator operator. The lower court allowed the jury to decide whether the managing agent was in a relationship to the premises which might make it liable to the plaintiff and the jury found for the plaintiff. The Appellate Division, in reversing the trial court's judgment for the plaintiff, held that the existence of such relationship must be resolved purely as a matter of law saying, at page 112:

"The written agreement between the owner and appellant

empowered the latter to rent and lease; to collect rents and deposit them in an agency account subject to the owner's right to demand at any time a statement of the accounts; to institute and prosecute actions; to make necessary repairs and alterations with the limitation that any alteration of a capital nature in excess of $2,500 would require the owner's approval; to supervise, hire and discharge employees, it being expressly provided, however, 'that all such employees are in the employ of the owner of the property and not of the managing agent.' Other powers were given to the agent which need not be detailed. It should be noted, however, that while the agreement authorized defendant to make repairs there was no specific undertaking by defendant to do so and it assumed no responsibility in that respect.

"It seems obvious that this agreement did not give such complete control to the appellant so as to exclude the owner entirely. The fact that the owner reserved to itself control over the funds collected by the agent and also the right to pass upon all alterations in excess of $2,500 indicates that the agent was not put in the owner's place in the operation of the premises. The owner having reserved to itself a certain amount of control it cannot be said that the managing agent's control was absolute and complete."

With regard to full control being required in order for liability to occur, 2 Restatement of Torts 2d, Section 387, comment *a*, contains the following:

"* * * the contractor must have taken over the *entire charge* of the land or building. It is *not enough* to *create liability* under the rule stated in this section that he has undertaken to make specific repairs, or even to inspect the land or building and from time to time make such repairs as he should discover to be necessary." (Emphasis added.)

O'NEILL, J., concurs in the foregoing dissenting opinion.