RIDDLE v McLOUTH STEEL PRODUCTS CORPORATION

Docket No. 109941. Submitted August 15, 1989, at Detroit. Decided
February 5, 1990. Leave to appeal appealed for.

Vance Riddle, a truck driver employed by an independent con-
tractor, spent his days hauling steel from McLouth Steel Prod-
ucts Corporation's plant in Trenton to its plant in Gibraltar.
The steel was covered in oil at the Trenton plant and trans-
ported to the Gibraltar plant, where the coils of steel were
stored on metal rails and permitted to drain. The area where
the steel was stored and permitted to drain was known as the
coil field. Riddle was walking through the coil field one day,
going from his truck to the foreman's office, when he slipped on
some oil and fell, suffering severe injury. Riddle and his wife,
Lucinda Riddle, filed suit against McLouth in Wayne Circuit
Court claiming that McLouth had breached the duties owed to
Mr. Riddle as a business invitee, including the duty to warn of
the accumulation of oil in the coil field. McLouth denied the
allegations and took the position that no warning was neces-
sary because Mr. Riddle was aware of the hazard of oil in the
area and because the hazard was open and obvious to all
persons working in the area. Following trial, the jury found
that both McLouth and Mr. Riddle were negligent and awarded
Mr. Riddle $4,680,000 and Mrs. Riddle $320,000. The damages
were reduced by thirty percent to reflect Riddle's degree of
negligence and judgment was entered, William J. Giovan, J.
McLouth appealed, arguing that the court erred in refusing to
modify the standard jury instruction defining the duty owed by
a possessor of premises to an invitee and in giving the standard
jury instruction which states that violations of administrative
rules and regulations are evidence of negligence.

The Court of Appeals *held*:

1. The trial court properly instructed the jury regarding

REFERENCES

Am Jur 2d, Premises Liability §§ 53-55, 141, 146-148; Trial §§ 588,
589.

Modern status of the rule absolving a possessor of land of liability
to those coming thereon for harm caused by dangerous physical
conditions of which the injured party knew and realized the risk.
35 ALR3d 230.

McLouth's duty to use reasonable care for the protection of its invitees. The issue of Riddle's knowledge was properly included and considered as it related to his contributory negligence and mitigation of damages.

2. The trial court did not err in instructing the jury that violations of administrative rules and regulations are evidence of negligence. The regulation at issue was intended to protect employees of independent contractors as well as the employees of the owner of the workplace. The instruction given was applicable and accurately states the law.

Affirmed.

1. NEGLIGENCE — BUSINESS INVITORS — DUTY OF CARE.

A business invitor has the duty to maintain its premises in a reasonably safe condition and of exercising due care to prevent and obviate the existence of a situation, known to it or which should be known, that might result in injury; at the same time, an invitee has a duty to exercise reasonable care under hazardous circumstances, and the invitee's knowledge of a dangerous condition is properly considered as it relates to the invitee's negligence and mitigation of damages in accordance with comparative negligence principles; while the obviousness of the danger may relate to the negligence of both the invitor and the invitee, it does not automatically absolve the invitor of liability.

2. NEGLIGENCE — SAFETY REGULATIONS.

Safety regulations in the workplace apply to employees of independent contractors, and violation of them by the owner of the workplace is evidence of negligence.

3. TRIAL — STANDARD JURY INSTRUCTIONS.

When an accurate and applicable Standard Jury Instruction has been properly requested by a party it should be given by the trial court if the court gives any instruction on the general subject covered by the requested instruction.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Angela J. Nicita* and *Courtney E. Morgan*), for plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Matthew A. Seward* and *Rosalind Rochkind*), for defendant.

Before: MacKENZIE, P.J., and MARILYN KELLY and T. M. BURNS,* JJ.

MARILYN KELLY, J. This is a premises liability action. A jury found defendant, McLouth Steel Products Corporation, liable to plaintiffs, Vance Riddle and his wife, Lucinda, for injuries sustained when Riddle slipped and fell at a McLouth plant. The jury award was $4,680,000 for Riddle and $320,000 for his wife. As the jury found Riddle thirty percent negligent, damages were reduced proportionately. McLouth appeals as of right. We affirm.

Riddle was a truck driver employed by an independent contractor. Since 1983, he had spent his entire workday hauling steel from McLouth's plant in Trenton to its plant in Gibraltar.

The steel hauled by Riddle first went through a "pickling" process. Cold-rolled steel was unrolled and covered with oil in Trenton. It was then rerolled and placed on racks from which excess oil drained. The pickled steel was then loaded onto trucks and taken to the Gibraltar plant. At Gibraltar, the steel rolls were unloaded and stored on metal rails where they continued to drain. The draining area was known as the coil field. Steel remained there until further processing.

On January 19, 1984, before his second run to the Gibraltar plant, Riddle was asked by a McLouth employee to deliver a box to the foreman's office at Gibraltar. After arriving at Gibraltar, Riddle removed the box from the truck. He and another driver, Charles Pfeiffer, began the walk to the foreman's office. They took the shortest route, through the coil field. Suddenly, Riddle slipped. His feet went out from under him and his hard

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

hat flew off. As he hit the concrete floor, his head struck one of the rails, severely injuring him.

Pfeiffer went to Riddle's assistance, and as he did, he realized there was oil on the floor. Neither Riddle nor Pfeiffer had noticed oil before. Both acknowledged that they knew oil dripped on the floor and sometimes made it slippery. However, they had seen defendant's employees cleaning the floor that morning. The nearest steel coil which had been set out to drain was approximately thirty feet from where Riddle fell.

McLouth had posted no signs warning of the dangers of oil draining. It had designated no safe walkways. The mill foreman, William Nelhengen, testified that McLouth was aware of the hazard. Efforts were made to clean up the oil every six to eight weeks. There were four walkways through the coil field. However, ninety-nine percent of the drivers used the walkway where Riddle fell. Lines were painted on the floor to warn crane operators not to place coils there.

On appeal, McLouth alleges two instructional errors. First, it claims the court erred in refusing to modify the standard jury instruction defining the duty owed by a possessor of premises to an invitee (SJI2d 19.03).

The court gave the following instruction defining McLouth's duty:

> It is the duty of a possessor of premises to exercise reasonable care for the protection of an invitee, the status that Mr. Riddle had in this case. The possessor must warn the invitee of dangers which it knows or has created and must inspect the premises to discover possible danger or conditions for which it does not know. It must take reasonable precautions to protect the invitee from dangers that are foreseeable. However, a possesser is not an insurer of the safety of an invitee, and

his duty is only to exercise reasonable care for the invitee's protection. The mere existence of a defect or danger is not enough to establish liability unless it is shown to be such of [sic] a character, or such duration that it would have been discovered by a reasonably careful person.[1]

McLouth claims that the instruction should have been modified. It wanted the court to inform the jury that there was no duty to warn of dangers that Riddle had knowledge of or which were open and obvious. McLouth admits there were no warnings, but it contends that Riddle knew there was oil on the floor based on his seventeen years of experience in the industry. The instruction given forced the jurors to find negligence based on a breach of the duty to warn, even if they found Riddle had knowledge of the condition. McLouth argues the instruction was incorrect under the law.

Vance and Lucinda Riddle contend that the issue of his knowledge of a dangerous condition takes on relevance only when his comparative negligence is construed. It does not diminish McLouth's duty to warn of known hazards. The trial judge instructed the jurors on Riddle's duty to use reasonable care. He informed them also that it was McLouth's theory that Riddle had breached his duty because of his knowledge of the dangerous condition.

This case puts into issue the status of the "no-duty to warn of open and obvious dangers rule" in light of Michigan's adoption of the doctrine of comparative negligence.

A business invitor has the duty to maintain its

---

[1] This instruction is essentially SJI2d 19.03 except the judge substituted the phrase "a possessor" for "the possessor." He was attempting to explain the duty in an abstract way to avoid giving the jurors the impression that they must find negligence.

premises in a reasonably safe condition. It must exercise due care to prevent and obviate the existence of a situation, known to it or which should be known, that might result in injury. *Beals v Walker,* 416 Mich 469,480; 331 NW2d 700 (1982); *Torma v Montgomery Ward & Co,* 336 Mich 468, 476; 58 NW2d 149 (1953). In the past, an invitor was not subject to liability if the invitee knew of the dangerous condition and realized the risks. 2 Restatement Torts, § 340. The Second Restatement reflected a slight modification. It imposed liability on the invitor if he should have anticipated the harm, despite the invitee's knowledge or the obviousness of the danger. 2 Restatement Torts, 2d, § 343A, p 218.

Further erosion of the no-duty rule has occurred in premises cases involving the natural accumulation of ice and snow. In *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975), the invitor argued that ice and snow hazards are obvious and may not give rise to liability. The Court held that an invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. The invitee's conduct is relevant only to his contributory negligence. *Quinlivan,* pp 260-261.

It is important to remember that the no-duty rule existed before the adoption of comparative negligence when plaintiff's contributory negligence barred his right to recover regardless of defendant's negligence. See, e.g., *Vanderah v Olah,* 387 Mich 643, 660; 199 NW2d 449 (1972). The no-duty rule is, in a sense, an application of prior common law. The invitor was absolved of liability when the invitee knew of the danger or when the danger was obvious. The knowledge or obviousness of the danger was the invitee's contributory negligence. If these conditions existed, the claim was barred.

The invitor's actions were not examined for negligence, as he was deemed to have no duty under the circumstances.

With the adoption of pure comparative negligence, the Supreme Court has attempted to enact a fair system of apportionment of damages, distributing responsibility according to the fault of the parties. *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), reh den 406 Mich 1119 (1979). Thus, it becomes necessary to reexamine the no-duty rule. Courts in other jurisdictions have done so and concluded that adoption of comparative negligence requires abolition of the no-duty rule. *Parker v Highland Park, Inc,* 565 SW2d 512 (Tex, 1978); *Woolston v Wells,* 297 Or 548; 687 P2d 144 (1984); *Cox v J C Penney Co, Inc,* 741 SW2d 28 (Mo, 1987); *Harrison v Taylor,* 115 Idaho 588; 768 P2d 1321 (1989). See also 35 ALR3d 230.

These courts, in comparing the no-duty rule with the assumption of the risk doctrine, have concluded that the no-duty rule, like assumption of the risk, is incompatible with comparative negligence. In *Harrison,* p 592, the Idaho Supreme Court explained this incompatibility:

> Prior to the advent of comparative negligence, contributory negligence was an absolute bar to recovery. Thus, it made little difference whether a known or obvious condition excused a land possessor's duty to an invitee, or simply insulated the possessor from liability for any breach of such duty. In either event, the injured invitee could not recover. But under the comparative negligence system, the difference is profound. If duty is not excused by a known or obvious danger, the injured invitee might recover, albeit in a diminished amount, if his negligence in encountering the risk is found to be less than the land possessor's negligence in allowing the dangerous condition or activity on his property. In contrast, if the invitee's

voluntary encounter with a known or obvious danger were deemed to excuse the land owner's duty, then there would be no negligence to compare—and, therefore, no recovery. The effect would be to resurrect contributory negligence as an absolute bar to recovery in cases involving a land possessor's liability to invitees.

We believe that the no-duty rule, like assumption of the risk, should be abolished in Michigan. See *Felgner v Anderson,* 375 Mich 23, 54; 133 NW2d 136 (1965). Both the invitee and invitor have a duty to exercise reasonable care under hazardous circumstances. Public policy supports apportionment of damages according to fault. Therefore, the invitee's knowledge of a dangerous condition is properly considered as it relates to the invitee's negligence and mitigation of damages in accordance with comparative negligence principles. See, e.g., *Forche v Gieseler,* 174 Mich App 588, 597; 436 NW2d 437 (1989). The obviousness of the danger may relate to the negligence of both the invitor and the invitee. However, it does not automatically absolve the invitor of liability.

In this case, the trial court properly instructed the jurors regarding the defendant-invitor's duty to use reasonable care. The issue of the plaintiff-invitee's knowledge was properly included and considered as it related to his contributory negligence and mitigation of damages. We do not find instructional error.

McLouth also argues that the jurors should not have been instructed pursuant to SJI2d 12.05, which states that violations of administrative rules and regulations are evidence of negligence. McLouth was charged with violating a safety regulation which required it to provide a workplace free

from hazards likely to cause serious bodily injury. 1979 AC, R 408.10015(3) and (4).[2]

Safety regulations in the workplace may apply to the employees of independent contractors. *Beals, supra,* p 481; *Hardaway v Consolidated Paper Co,* 366 Mich 190, 197; 114 NW2d 236 (1962). In the case before us, the trial court concluded that the regulation at issue was intended to protect employees of independent contractors as well as McLouth's employees.[3] We agree. The regulation seems designed to protect against slip and fall hazards. Although employees are specifically mentioned, it is reasonably foreseeable that employees of independent contractors would be exposed to the same dangers and should be protected. We conclude that the instruction given was applicable and accurately states the law. *Johnson v Corbet,* 423 Mich 304; 377 NW2d 713 (1985).

Affirmed.

---

[2]    (3) The floor of a work area, passageway, or aisle shall be maintained in a manner that does not create a hazard to an employee, free of accumulations of scrap, debris, water, oil, grease, and other slip and trip hazards, except where an immediate emergency operation must be performed.

(4) Where a wet process, such as, but not limited to, plating operations, food processing, or car washing, is used, drainage shall be maintained or false floors, platforms, or mats used. Where an employee is required to work on a wet surface in a wet process, the surface shall be slip-resistant.

[3] The Court did not read the regulation to the jurors. It gave the following instruction:

They [Plaintiffs] contend that the Defendant's conduct also violates a Michigan Occupational Safety and Health Act Provision which requires the Defendant to provide a place of work free from hazards likely to cause serious bodily injury.

Violation of this statute, the Plaintiffs contend is evidence of negligence on the part of the Defendant.