824 P.2d 293

Nancy J. KLOPP, Petitioner,

v.

The WACKENHUT CORPORATION
and Trans World Airlines, Inc.,
Respondents.

No. 19318.

Supreme Court of New Mexico.

Jan. 8, 1992.

Duhigg, Cronin & Spring, David Duhigg, Helena Gorochow, Albuquerque, for petitioner.

William H. Carpenter, Michael B. Browde, Albuquerque, for amicus curiae NM Trial Lawyers Ass'n.

Rodey, Dickason, Sloan, Akin & Robb, Susan L. Snyder, Albuquerque, for respondent TWA.

Sager, Curran, Sturges & Tepper, P.C., D. Michael Johanson, C. Kristine Osnes, Albuquerque, for respondent Wackenhut.

Weinbrenner, Richards, Paulowsky, Sandenaw & Ramirez, Thomas A. Sandenaw, Jr., Las Cruces, Montgomery & Andrews, Bruce Herr, Catherine E. Pope, Santa Fe, for amicus curiae NM Defense Lawyers Ass'n.

## OPINION

RANSOM, Chief Justice.

Nancy Klopp appealed to the court of appeals from a directed verdict rendered at the conclusion of her case against Trans World Airlines, Inc. and Wackenhut Corpo-

ration. Klopp had sued for personal injuries sustained when she tripped over the stanchion base of a metal detector at an airport security station. Wackenhut operated the security station for TWA. Deferring to this Court to resolve whether the open and obvious danger doctrine has been abrogated by comparative negligence, the court of appeals affirmed the directed verdict.

We issued a writ of certiorari to review, with respect to an obvious danger, the duty owed business visitors by TWA as the occupier of the premises, and by Wackenhut as the operator of the station. We also consider whether it may be inferred from the evidence that either defendant reasonably should have anticipated that persons passing through the station would be distracted from the dangerous condition. We are aided in this appeal by the able amicus curiae briefs of the New Mexico Defense Lawyers Association and the New Mexico Trial Lawyers Association.

*Standard of review.* Just as the trial court must consider all of the evidence in ruling upon a motion for directed verdict, this Court must do likewise on appeal from a judgment entered pursuant to a directed verdict; both courts must resolve in favor of the party resisting the motion any conflicts or contradictions in the evidence, and the interpretation most favorable to such party must be accepted in the face of reasonable but conflicting inferences deducible from uncontradicted evidence. *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 728–29, 749 P.2d 1105, 1107–08 (adopting, inter alia, the standard announced in *Skyhook Corp. v. Jasper,* 90 N.M. 143, 146, 560 P.2d 934, 937 (1977)), *cert. denied,* 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). In applying this standard of review, the principal consideration is to minimize interference with the jury function so as not to erode a litigant's right to trial by jury. *Melnick,* 106 N.M. at 729, 749 P.2d at 1108. A plaintiff may not be deprived of a jury determination simply because the possibility of a recovery may appear remote; rather, a directed verdict is proper only when there is no pretense of a prima facie case. There must be no substantial evidence supporting one or more essential elements of the case. *Id.*

*Most favorable facts.* Accordingly, Klopp summarizes the evidence adduced at trial as follows. On February 27, 1988, she was proceeding through the Albuquerque International Airport to board an airplane when she passed through an airport security station. The station consisted of an upright metal detector, to the side of which was a baggage table. The station was operated by Wackenhut under contract with TWA. The latter owned the equipment and had arranged its particular configuration. The alarm sounded as Klopp stepped through the metal detector. Having activated the alarm, Klopp removed her bracelets, placed them on a tray on the table, and stepped through the detector again. The alarm was not triggered, and she moved to the left to retrieve her bracelets. In so doing, she tripped over the protruding stanchion base of the metal detector. She fell, injuring her left leg and right knee. The stanchion base protruded approximately eighteen inches. Preoccupied with retrieving her belongings, Klopp's attention was distracted from this base.

*The issues.* In their motions for directed verdict, TWA and Wackenhut argued that the stanchion base of the metal detector was open and obvious and, because there was no reason to believe it constituted a danger, no duty of care was owed to Klopp. TWA relied upon the rule of law set forth in Uniform Jury Instruction (UJI) 13–1310:

An [owner] [occupant] owes a duty to a business visitor, with respect to known or obvious dangers, if and only if:

(1) The [owner] [occupant] knows or has reason to know of a dangerous condition on his premises involving an unreasonable risk of danger to a business visitor; and

(2) The [owner] [occupant] should reasonably anticipate that the business visitor will not discover or realize the danger [or that harm will result to the business visitor, even though the business visitor knows or has reason to know of the danger].

If both of these conditions are found to exist, then the [owner] [occupant] had a duty to use ordinary care to protect the business visitor from harm.

SCRA 1986, 13–1310.

Klopp contends that, under the evidence as recited, fact questions existed whether the protruding stanchion base involved an unreasonable risk of danger, and whether TWA reasonably could have anticipated that a passenger's attention may be distracted from that danger, or that such person would forget the danger she had discovered. Klopp also argues that the open and obvious danger rule as set forth in UJI 13–1310 is, in essence, a contributory negligence bar to her cause of action, and thus, the instruction is incompatible with the doctrine of comparative negligence adopted in *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981). Klopp submits that since abrogation of the open and obvious danger rule would impose no significant new duties and conditions, or take away previously existing rights, retrospective disapproval of the doctrine is appropriate. *See Lopez v. Maez*, 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982). TWA takes issue with Klopp's statement of the evidence and argues that the open and obvious danger rule is strictly one of duty without regard to any fault of the business visitor.

█ TWA submits, further, that Klopp failed to preserve a claim of error in regard to the incompatibility of the open and obvious danger rule with comparative negligence. The record reflects to the contrary that, at the conclusion of Klopp's case in chief and in response to the motion for directed verdict, Klopp argued that any negligence on her part in the face of an open and obvious danger should not eliminate the duty of care owed by the occupier of the premises. "[New Mexico is] a comparative negligence state, so consequently whether or not plaintiff may or may not have been negligent does not eliminate ...

the duty the defendant was talking about [in relation to an open and obvious danger]." We agree with Klopp that she raised the question of the jury's role in comparing negligence and apportioning liability and that the issue of the open and obvious danger rule under comparative negligence is properly before this Court.

*Duty to warn distinguished.* The Defense Lawyers Association argues that, in both premises liability and products liability cases, New Mexico courts long have considered that the open and obvious danger rule applies to that portion of the negligence formula concerning the duty of the landowner or supplier *to warn* of known, or open and obvious dangers. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977); *Proctor v. Waxler*, 84 N.M. 361, 503 P.2d 644 (1972); *Garrett v. Nissen Corp.*, 84 N.M. 16, 498 P.2d 1359 (1972); *Villanueva v. Nowlin*, 77 N.M. 174, 420 P.2d 764 (1966); *Romero v. Kendricks*, 74 N.M. 24, 390 P.2d 269 (1964); *Burgi v. Acid Eng'g, Inc.*, 104 N.M. 557, 724 P.2d 765 (Ct.App.), *cert. denied*, 104 N.M. 460, 722 P.2d 1182 (1986); *Jones v. Minnesota Mining & Mfg. Co.*, 100 N.M. 268, 669 P.2d 744 (Ct.App.1983); *Arenivas v. Continental Oil Co.*, 102 N.M. 106, 692 P.2d 31 (Ct.App.1983), *cert. quashed*, 102 N.M. 88, 691 P.2d 881 (1984); *Michael v. Warner/Chilcott*, 91 N.M. 651, 579 P.2d 183 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978); *Perry v. Color Tile of New Mexico*, 81 N.M. 143, 464 P.2d 562 (Ct.App.1970).[1] In this case, however, we address the duty issue irrespective of a specific duty to warn. If the nature of the risk would not be made more obvious through the giving of additional warning, then the giving of a warning would be a false issue. But this is not dispositive of whether ordinary care has been exercised to keep the premises safe.

*Duty to exercise ordinary care without regard to whether persons invited on*

---

1. The Defense Lawyers also acknowledge the few New Mexico cases that have held, in fact situations in which plaintiff encountered a known and obvious danger, that plaintiff assumed the risk, *Dempsey v. Alamo Hotels, Inc.*, 76 N.M. 712, 418 P.2d 58 (1966); *Bogart v.*

*Hester*, 66 N.M. 311, 347 P.2d 327 (1959), or that plaintiff was contributorily negligent. *Boyce v. Brewington*, 49 N.M. 107, 158 P.2d 124 (1945); *Wood v. Southwestern Pub. Serv. Co.*, 80 N.M. 164, 452 P.2d 692 (Ct.App.1969).

*premises are themselves negligent in some way.* Since deciding the case before us, the court of appeals has filed an opinion in *Davis v. Gabriel,* 111 N.M. 289, 804 P.2d 1108 (Ct.App.1990), addressing whether recovery against a contractor was barred by a business visitor's knowledge of the risk of injury from debris left in a hallway by the contractor who was remodeling an office building. Initially, the court correctly applied the rule that one who, on behalf of the possessor of realty, creates a dangerous condition is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the realty. *Id.* at 291, 804 P.2d at 1110; *see also Tipton v. Texaco, Inc.,* 103 N.M. 689, 695–96, 712 P.2d 1351, 1357–58 (1985) (approving *Restatement (Second) of Torts* § 384 (1964)). However, in applying the rule of liability for a possessor of land, the court of appeals stated that the possessor of land has no duty to take steps that are necessary only to protect business visitors who are negligent. *Davis,* 111 N.M. at 291, 804 P.2d at 1110.

██ In *Davis* the court of appeals conditioned the duty owed invitees upon whether (1) the possessor of land reasonably could have foreseen that invitees *exercising due care* would be injured by the condition of the land, and (2) such risk made it unreasonable for the possessor not to take certain precautions. *Id.* at 292, 804 P.2d at 1111. Following a similar rationale, in oral argument in the case before us, TWA contended it had no duty to design the security station "for klutzes and total idiots." We disagree with this analysis and with the inferences drawn from the recent opinion of the court of appeals in *Davis.* We hold that, in a place of public accommodation, an occupier of the premises owes a duty to safeguard each business visitor whom the occupier reasonably may foresee could be injured by a danger avoidable through reasonable precautions available to the occupier of the premises.

In *Davis* the court of appeals held that "the scope of the duty is determined by reference to the foreseeable behavior of reasonably careful invitees, considered as a class." *Id.* If we were to accept that no duty is owed to invitees foreseeably injured only through contributory negligence, we would vitiate the ameliorating effect of comparative fault. While we fully understand that, absent a breach of duty, in logic there can be no fault to compare, the fallacy in that argument is that it is premised not on the foreseeable behavior of business visitors, but on the foreseeable behavior of reasonably careful visitors. On that premise, the negligence of a particular visitor is preclusive if outside the ambit of the foreseeable behavior of reasonably careful visitors.

██ Simply by making hazards obvious to reasonably prudent persons, the occupier of premises cannot avoid liability to a business visitor for injuries caused by dangers that otherwise may be made safe through reasonable means. A risk is not made reasonable simply because it is made open and obvious to persons exercising ordinary care. *See Fabian v. E.W. Bliss Co.,* 582 F.2d 1257, 1263 (10th Cir.1978) (manufacturer has duty to use reasonable care in design of its products, and that duty is not changed because any risk from use of products might be obvious). Cases that appear to have held the duty to avoid unreasonable risk of injury to others is satisfied by an adequate warning are overruled by us today. *E.g., Skyhook Corp. v. Jasper,* 90 N.M. at 148, 560 P.2d at 939 (no duty to make product safe when risk is obvious, known, and specifically warned against); *Garrett v. Nissen Corp.,* 84 N.M. at 20, 498 P.2d at 1363 (if duty to warn is satisfied, then there is no defect in product). Moreover, we think that some degree of negligence on the part of all persons is foreseeable, just like the inquisitive propensities of children, and thus, should be taken into account by the occupant in the exercise of ordinary care.[2]

**2.** The Defense Lawyers Association points out that UJI 13–1310 (open and obvious danger rule) does not define the term "dangerous condition." The Defense Lawyers submit that the definition of that term given in UJI 13–1319 (duty of occupant to keep premises free from "dangerous condition") could apply to UJI 13–1310. A dangerous condition is defined in UJI

■ *Unforeseeable encounter with a known danger.* If the contributory negligence of a business visitor has been so extraordinary as to have been unforeseeable, then it would not have been a breach of duty for the occupier not to have taken precautions against an open and obvious risk. We do not read UJI 13–1310 to say anything to the contrary. There is no duty in relation to known or obvious dangers if the occupier of the premises has no reason to know of an unreasonable risk of danger to a business visitor. " 'If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight.' " *Proctor v. Waxler,* 84 N.M. 361, 364, 503 P.2d 644, 647 (1972) (quoting 2 Fowler V. Harper & Fleming James, Jr., *The Law of Torts* § 27.13, at 1489–90 (1956)).

*Court rarely decides existence of unreasonable risk.* Recently, in *Calkins v. Cox Estates,* 110 N.M. 59, 792 P.2d 36 (1990), we explored the duty of a landowner to maintain a common area:

A duty to an individual is closely intertwined with the foreseeability of injury to *that individual* resulting from an activity conducted with less than reasonable care by the alleged tort-feasor. *See [Ramirez v. Armstrong,* 100 N.M. 538, 541, 673 P.2d 822, 825 (1983)]; *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 162 N.E. 99 (1928). "If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant." *Ramirez,* 100 N.M. at 541, 673 P.2d at 825.

A plaintiff must show that defendant's actions constituted a wrong against him, not merely that defendant acted beneath a required standard of care and that plaintiff was injured thereby. He must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff. This concept limits liability for negligent conduct—a potential plaintiff must be reasonably foreseeable to the defendant because of defendant's actions. *See Palsgraf,* 248 N.Y. at 342, 162 N.E. at 100.

*Id.* at 62, 792 P.2d at 39. Further:

In New Mexico, as stated in the majority opinion, we define negligence as an act foreseeably involving an unreasonable risk to that individual who complains of injury. *See also* SCRA 1986, 13–1601. Foreseeability is most often a question of fact and only rarely, as in *Palsgraf,* may foreseeability be considered a false jury issue.

*Id.* at 67, 792 P.2d at 44 (Ransom, J., dissenting).

■ *Jury to decide whether risk is unreasonable.* We hold that it is for the jury to decide in virtually every case whether a dangerous condition on the premises involved "an unreasonable risk of danger to a business visitor" and whether the occupier "should reasonably anticipate that the business visitor will not discover or realize the [obvious] danger." *Accord Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989) (abolishing open and obvious danger doctrine in light of adoption of comparative negligence); *Riddle v. McLouth Steel Prods. Corp.,* 182 Mich.App. 259, 451 N.W.2d 590 (1990) (same); *Cox v. J.C. Penney Co.,* 741 S.W.2d 28 (Mo.1987) (en banc) (same); *Woolston v. Wells,* 297 Or. 548, 687 P.2d 144 (1984) (en banc) (same); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978) (same); *Donahue v. Durfee,* 780 P.2d 1275 (Utah Ct.App.1989) (same), *cert. denied,* 789 P.2d 33 (Utah 1990); *O'Don-*

13–1319 as "a condition which a person exercising ordinary care would foresee as likely to cause injury to one exercising ordinary care for his own safety." SCRA 1986, 13–1319. Thus, as the Defense Lawyers argue, when UJI 13–1310(1) is read in light of the definition in UJI 13–1319 and in light of our earlier New Mexico cases involving the open and obvious danger rule, the person in possession of premises owes a duty to invitees where the proprietor should foresee that the danger is one that is likely to cause injury to persons *exercising ordinary care for their own safety.* Suffice to say that we see the same problem with the definition of dangerous condition in UJI 13–1319 (and UJI 13–1318) after the adoption of comparative negligence that we see with the approach taken in *Davis* limiting duty by the foreseeable behavior of reasonably careful visitors.

*nell v. City of Casper,* 696 P.2d 1278 (Wyo. 1985) (same).

■ *UJI 13–1310 disapproved.* Here, as we discuss below, the trial court could not have determined that the contributory negligence of the business visitor was so extraordinary as to be unforeseeable and to obviate any duty owed by the occupier of the premises with respect to known or obvious dangers.[3] Therefore, we now must decide a policy question specifically put to us in this appeal. Should we continue under UJI 13–1310 also to have the jury decide whether the occupier of the premises owed a duty to the business visitor based upon the jury's decision whether the occupier knew or had reason to know that the risk of the obvious danger was unreasonable to that business visitor?

Because "the court must determine *as a matter of law* whether a particular defendant owes a duty to a particular plaintiff," *Calkins,* 110 N.M. at 62, 792 P.2d at 39, we believe it becomes apparent under principles of comparative fault that it is inappropriate that a case like this be submitted to the jury under the present UJI 13–1310. Once the court has decided that the contributory negligence of the business visitor was foreseeable in the face of known or obvious dangers, the jury should be instructed that, with respect to an obviously dangerous condition of which the occupier of the premises has knowledge, or has reason to know, the occupier has a duty to use ordinary care to keep the premises safe for use by the business visitor. SCRA 1986, 13–1309 (duty to business visitor). Ordinary care will be defined for the jury as the care that a reasonably prudent person would use in the conduct of his own affairs, and the jury will be instructed that what constitutes ordinary care varies with the nature of what is being done.

As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases. In deciding whether ordinary care has been used, the conduct in question must be considered in the light of all the surrounding circumstances.

SCRA 1986, 13–1603 (ordinary care). Further, the jury will be instructed that to rise to the level of negligence an act must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to another. SCRA 1986, 13–1601 (negligence). These simple instructions will give the occupier of the premises an ample basis on which to argue that the known or obvious nature of a condition on the premises did not involve an unreasonable risk of danger to a business visitor, or that the occupier reasonably should not have anticipated either that the business visitor would not discover the danger or that the danger could not be encountered with reasonable safety even when known and appreciated.

■ *Genuine issues of material fact under the evidence.* On whether the trial court properly could have directed a verdict because the contributory negligence of Klopp was so extraordinary as to have obviated any duty on the part of the occupier to take precautions against the open and obvious danger, one that was appreciable and in plain sight, TWA argues that it neither knew nor had reason to know that the particular condition of the stanchion base on the metal detector created or involved an unreasonable risk of danger to a business visitor passing through it. In 1987 and again in 1988, at least 540,000 persons passed through that metal detector set up in that specific configuration without any incident whatsoever. The particular equipment at the security station and the configuration of the security station

---

**3.** Considerations for the trial court include, among others, whether the hazardous condition was such that it could not be encountered safely even if the visitor was warned or otherwise was aware of and appreciated the danger, serious bodily injury or death was possible, the attention of the visitor may be distracted or diverted as he or she approached the dangerous condition, the condition was in a place where the visitor may not find it, or whether the visitor may have a lapse of memory. *See, e.g., Greiser v. Brown,* 102 N.M. 11, 690 P.2d 454 (Ct.App. 1984) (lapse of memory); *see also* 5 Fowler V. Harper, Fleming James, Jr., & Oscar S. Gray, *The Law of Torts* § 27.13, at 244–49 (2d ed. 1986) (listing factors to be considered in determining whether an obvious condition is unreasonably dangerous).

had been approved and certified by the Federal Aviation Authority. Other airlines used the same type of metal detector and the same configuration at other areas in the airport. Prior to Klopp's accident, no one ever had fallen, slipped, or tripped while passing through the metal detectors.

While the facts recited by TWA well may have persuaded the jury that TWA did not breach its duty or that any fault to be apportioned to TWA should be minimal, we believe the trial court erred when, in essence, it found no substantial evidence to support the foreseeability of harm to a business visitor. The eighteen-inch extension of the stanchion base of the metal detector created a danger of tripping as obvious to us as TWA argues it to have been obvious to Klopp. Like TWA, we have had considerably more time to contemplate this danger and to study the security station's configuration than did Nancy Klopp.

■ In response to the alarm that sounded when she stepped through the metal detector, Klopp was required to remove her jewelry and place it in a tray on a table open to the public. As Klopp reentered the metal detector her jewelry was most readily accessible to her on a line across the stanchion base. Despite the safety record, the fact that Klopp was distracted from the presence of the stanchion base appears to us not so extraordinary as to be unforeseeable. We conclude that TWA owed Klopp a duty to use ordinary care to protect her from tripping over the stanchion base while preoccupied with recovering her jewelry. For exactly the same reasons that the court erred in finding no duty, as this case has been postured by the parties, the court erred in not allowing the jury to decide under all the circumstances whether TWA breached the duty to use ordinary care to protect Klopp from harm. Negligence, proximate cause, and comparative fault are issues to be decided by the jury whenever reasonable minds may differ. *See City of Belen v. Harrell,* 93 N.M. 601, 604, 603 P.2d 711, 714 (1979); *Gilbert v. New Mexico Constr. Co.,* 39 N.M. 216, 224, 44 P.2d 489, 494 (1935);

*Guitard v. Gulf Oil Co.,* 100 N.M. 358, 363, 670 P.2d 969, 974 (Ct.App.), *cert. denied,* 100 N.M. 327, 670 P.2d 581 (1983).

*Liability of Wackenhut.* TWA hired Wackenhut to provide security personnel to operate the airport security station. TWA provided all necessary equipment and positioned that equipment. Once the equipment was positioned, and after the FAA had certified its proper operation, the equipment could not be repositioned without first obtaining recertification. Wackenhut was forbidden to make any alterations to the configuration.

Wackenhut states that in ruling in its favor the trial judge found it unnecessary to consider the open and obvious danger rule. Wackenhut asserts that the court properly ruled that its only duty to Klopp was a duty to prevent deadly or dangerous weapons from being carried aboard an airliner, and that, as a matter of law, Wackenhut owed no duty to Klopp regarding the positioning, operation, or maintenance of the security station. The relevant statements of the trial court on this matter are:

> [T]here is just no prima facie case that there has been established with reference to Wackenhut.... In this case, we don't have a standard of care which is imposed upon Wackenhut that was a security agent for doing anything more than managing the equipment that was given to the company and to its agents. There's no testimony or evidence that Wackenhut breached any of the duties imposed upon them for maintaining that security.

The rationale of the trial court seems to confuse duties imposed on an employee or agent by contract (*e.g.,* to provide airport security) and duties imposed by the law of negligence.

■ *-Liability of an agent for injuries caused by dangerous condition of premises or chattels.* The tort liability of an employee or an agent for an omission is determined by the law of negligence and is not limited to the affirmative obligations of the contract of service. *See S.H. Kress & Co. v. Selph,* 250 S.W.2d 883, 892 (Tex.Civ. App.1952). Nevertheless, the liability of an

employee or agent for injuries caused by dangerous conditions on occupied premises is directly related to actual control over the premises. The *Restatement (Second) of Agency* states the rule as follows:

> An agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take.

*Restatement (Second) of Agency* § 355 (1957). Comment (b) of that section reads in part: "If an agent has only a limited control over land or chattels, he is subject to liability only to the extent that he is authorized to exercise such control." *Restatement (Second) of Agency* § 355 comment b (1957); *see also Restatement (Second) of Torts* § 387 (1964) (liability of independent contractor or servant taking over entire charge of land); 1 Floyd R. Mechem, *A Treatise on the Law of Agency* § 1474 (2d ed. 1914) (liability of an agent for condition of premises over which he has control); *Richland County v. Anderson*, 129 Mont. 559, 291 P.2d 267 (1955) (husband, who on occasion acted as the agent of his wife in connection with a certain dam and reservoir, had no liability for damages caused by flooding where wife was responsible for maintenance and repair and husband had no control over dam and reservoir); *Jacobs v. Mutual Mort. & Invest. Co.*, 6 Ohio St.2d 92, 216 N.E.2d 49 (1966) (manager of rental premises found to have sufficient control of premises to fix liability upon manager for unsafe condition in hallway; finding by lower appellate court that contract with owner did not invest management company with exclusive control not determinative).

 *-Wackenhut had no liability for injuries caused by configuration of equipment when it lacked authority to rearrange the station.* The above authorities would suggest that although Wackenhut's duty and liability in many respects may have paralleled that of the owner or person in possession of the commercial premises (TWA in this case), with regard to liability for harm caused by the configuration of the table and screening device, Wackenhut has no liability due to its limited control over those chattels. Wackenhut had no control over the configuration that was to be employed and, in point of fact, was forbidden to change the configuration of the station. Klopp does not take issue with that assertion, but argues that Wackenhut on several occasions placed a wastebasket alongside the metal detector, forcing persons to go around the protrusion.[4] We believe, however, that while Wackenhut certainly had a greater duty to passengers than merely to search for weapons,[5] that duty was limited by the extent of its control over the chattels in its custody or over the area that it occupied. For this reason, we hold that Wackenhut was relieved of liability for harm caused by the configuration of equipment that it lacked authority to rearrange.[6]

---

4. Klopp submits that the testimony of Wackenhut's security guard, that a trash bin had been placed on several occasions adjacent to the protruding stanchion base, was proof that Wackenhut was aware of the unreasonably dangerous condition of the protruding base. Klopp's interpretation of that testimony is strained, but giving that evidence its most beneficial interpretation, the issue remains not whether a person with limited control has knowledge of a risk, but whether such person has a duty to ameliorate a risk from the configuration of premises which that person is not authorized to control. Evidence of Wackenhut's knowledge of the risk may be relevant to determining whether Wackenhut owed a duty to warn or to otherwise ameliorate the known risk. As discussed below in footnote six, we offer no opinion on those issues.

5. For example, Wackenhut might breach a duty of ordinary care owed to the public if it allowed its employees to leave suitcases where passengers might trip and fall over them.

6. We leave open the question whether an agent with limited control over occupied premises should take, in the exercise of ordinary care, measures other than to directly correct a dangerous condition existing on the premises. For instance, it could be argued that the fact that Wackenhut had no authority to change the configuration should not relieve it of a duty to guard against the harm by warning persons of the protruding base, by placing a barrier forcing persons around the protrusion, or by notifying TWA of any dangerous condition of which it was aware. However, given the posture of this

*Conclusion.* For the above reasons, we reverse the judgment of the court of appeals and the directed verdict in favor of TWA. We affirm the directed verdict in favor of Wackenhut. The cause shall be remanded to the district court for trial on the merits and further proceedings consistent with this opinion.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.

case, we do not reach those questions. Klopp argues only that both TWA and Wackenhut were responsible for the unsafe design and configuration of the security station. Due to Wackenhut's undisputed lack of control over the choice of equipment and its configuration at the checkpoint, it is relieved of any liability for harm caused by the design and configuration of that equipment. Moreover, in this appeal, Klopp for the most part has directed her argument to the incompatibility between the open and obvious danger rule and comparative negligence. Without the benefit and guidance of briefing on these other issues, we hesitate to consider any changes in established common-law principles.