This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**


**MICHAEL SCOTT REILLY,**

       Plaintiff-Appellant,

v.                                                                                          **No. 30,084**

**LA MONTANITA FOOD COOPERATIVE and NOB HILL PARTNERSHIP,**

       Defendants-Appellees.


**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sheri Raphaelson, District Judge**

Voorhees Law Firm, P.C.
Scott F. Voorhees
Julia V. Jarvis
Santa Fe, NM

for Appellant

Yenson, Lynn, Allen & Wosick, P.C.
Matthew Pullen
Albuquerque, NM

Wheeler Trigg O'Donnell LLP
Paul F. Hultin

Bryan D. Cross
Denver, CO

for Appellee La Montanita Food Cooperative

Allen, Shepherd, Lewis, Syra & Chapman, P.A.
E.W. Shepherd
Jeremiah L. Ritchie
Albuquerque, NM

for Appellee Nob Hill Partnership

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Plaintiff Michael Scott Reilly filed a complaint for damages for personal injuries against La Montanita Food Cooperative (the Co-op) and Nob Hill Partnership (Nob Hill) (collectively, Defendants) for injuries he sustained as the result of having been struck by a door opened by an employee of the Co-op in the breezeway of the Nob Hill Shopping Center. Nob Hill was the owner and operator of the shopping center. Under its lease agreement with the Co-op, Nob Hill retained the obligation to maintain and operate common areas including the breezeway in which Plaintiff was injured.

At the close of Plaintiff's case, Nob Hill moved for and was granted a directed verdict based on the district court's determination that there was no evidence to

support a finding that Nob Hill breached its duty of care. The issue of the Co-op's negligence went to the jury that returned a verdict in the Co-op's favor.

As to the Co-op, Plaintiff seeks a re-trial claiming that the district court erred in disallowing the testimony of his proffered safety expert and in allowing the admission of overly prejudicial testimony. He claims that the district court erred, too, in granting a directed verdict to Nob Hill. We hold that the district court erred in excluding the testimony of Plaintiff's safety expert, but only as to Nob Hill. As to Plaintiff's other evidentiary claims, we hold that there was no error. And we hold that the directed verdict in favor of Nob Hill was erroneous because the question of whether Nob Hill breached its duty of care should have gone to the jury.

**DISCUSSION**

**Exclusion of Expert Witness**

The Co-op moved to exclude the testimony of safety expert Brock Carter. After considering Mr. Carter's deposition, his voir dire testimony, and Rule 11-702 NMRA, the district court ruled that Mr. Carter would not be permitted to testify as an expert.

Plaintiff asserts that the district court erred by applying the wrong criteria for the admission of expert testimony. He argues that the district court did not properly consider all of the factors of Rule 11-702 and that the court excluded Mr. Carter's testimony on faulty grounds, namely, "because he did not have a certificate saying he

3

was qualified as an expert" and because the testimony would not assist the jury in making its determination.

Whether to admit expert testimony is within the sound discretion of the district court and, absent a showing of abuse of that discretion, it will not be reversed. *State v. Wilson*, 2011-NMSC-001, ¶ 31, 149 N.M. 273, 248 P.3d 315. We will not find an abuse of discretion unless we can characterize the district court's ruling as "clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Under Rule 11-702, expert testimony is admissible upon the following conditions: "(1) experts must be qualified; (2) their testimony must assist the trier of fact; and (3) their testimony must be limited to the area of scientific, technical, or other specialized knowledge in which they are qualified." *State v. Torres*, 1999-NMSC-010, ¶ 23, 127 N.M. 20, 976 P.2d 20.

The district court determined that Mr. Carter was being offered as an expert in two areas: the structural design and placement of the breezeway walls and doorway and non-structural additions to the area that could have made the breezeway safer. The court determined that Mr. Carter was not qualified as an expert in structural design. Plaintiff conceded the correctness of that ruling, leaving at issue the question of Mr. Carter's qualifications regarding non-structural safety measures. The district

court found Mr. Carter's qualifications as to non-structural safety measures lacking because his testimony did not include anything specific regarding where he learned or how he knew that his safety recommendations were correct. Additionally, the court determined that Mr. Carter lacked specific knowledge as to door safety within the broad, general field of safety.

Mr. Carter's testimony was that he "began working in safety in 1973" and received on-the-job training from his father who had a safety background. Mr. Carter is the president of Safety Counselling, Inc., a company started by him and his father, Mr. Carter's employer for over twenty-five years. He educated himself by subscribing to various safety publications and by working with the standards of various safety organizations such as "OSHA . . . , MSHA . . . , National Safety Council, National Fire Protection Association, and National Electric Code[.]" With regard to any specific experience in door safety, Mr. Carter explained that he, through Safety Counselling, Inc., had performed safety inspections or safety audits for one of his major clients for the client's approximately 800 retail operations and that he inspected multiple bank facilities for another client. Further, Mr. Carter testified that Safety Counselling, Inc. was responsible for the "facility inspections, grounds inspections, . . . [and] ride inspections[,]" as well as "investigated accidents" for the New Mexico State Fair for over twenty years. Additionally, for the Workers' Compensation

Administration, Mr. Carter's company made safety recommendations in over 800 public and private facilities to prevent injuries and accidents. Mr. Carter also stated that he taught safety classes at least once a month and that he had been qualified as an expert witness and had testified in that capacity "12 to 20 times."

We agree with Plaintiff that Mr. Carter's experience and training qualified him as an expert on non-structural safety measures. Regarding the court's concern over Mr. Carter's lack of specific knowledge of door safety within the broad, general field of safety, nothing in Rule 11-702 or case law cited for us suggests such a narrow requirement, and Mr. Carter's testimony indicated that he had performed significant work with public and private facilities. His testimony also supported his extensive experience in "safety work with doorways[,]" including "recommendations about making [doorways] safer[.]" Rule 11-702 states that "a witness qualified as an expert by knowledge, skill, experience, training[,] or education may testify thereto in the form of an opinion or otherwise" if such testimony will assist the trier of fact. In examining Rule 11-702, our Supreme Court has emphasized that "the disjunctive 'or' in Rule 11-702 permits a witness to be qualified under a wide variety of bases[.]" *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244. Mr. Carter's twenty-five-plus years of experience in the area of safety was sufficient to meet the requirements of Rule 11-702.

Likewise, we agree with Plaintiff that the district court erred in excluding Mr. Carter's testimony based on a determination that his testimony would not assist the jury. The district court's ruling in this regard was based on two grounds. First, the court concluded that all of Mr. Carter's suggestions were "common sense solutions" that would be appropriate to raise in closing argument or through witness testimony. That position was closely related to the district court's view that Mr. Carter did not have "any official expertise" in the area of safety other than that he held himself out as an expert. Second, the court concluded that, because Mr. Carter lacked knowledge of the building code or other applicable laws, he would not have been able to tell the jury whether the changes he suggested could have been implemented.

Among Mr. Carter's many safety suggestions were the following: putting up a mirror on the wall opposite of the door, changing the size of the window within the door, putting up railings around the door, and painting the floor in front of the door a different color. That some of the safety measures Mr. Carter suggested may have overlapped the common knowledge of an average juror did not preclude Mr. Carter's expert opinions based on the specialized technical knowledge gained through his years of experience in the field of safety. *See State v. Hueglin*, 2000-NMCA-106, ¶ 16, 130 N.M. 54, 16 P.3d 1113 ("[I]t is well established that . . . expert testimony that overlaps an area of knowledge within the comprehension of the jury is not subject to automatic

exclusion."). Moreover, lack of knowledge of the building code or applicable laws went to the weight, not the admissibility of Mr. Carter's testimony. *See Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶¶ 13-14, 132 N.M. 631, 53 P.3d 398 (concluding that a safety expert was qualified to testify regardless of his lack of design experience with regard to the equipment in question because his lack of experience went to the weight rather than the admissibility of his testimony). At trial, Defendants were free to weigh in on Mr. Carter's deficiencies. The jury, having been instructed that "[y]ou alone are the judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them[,]" was free to weigh every aspect of Mr. Carter's testimony and to reject any portion of the testimony that was not credible. Having concluded that Mr. Carter was qualified as an expert, we likewise conclude that his opinions, which were based on both technical and specialized knowledge, were admissible under Rule 11-702.

We are not, however, persuaded that exclusion of Mr. Carter's testimony as to the Co-op was error. Evidence at trial showed that Nob Hill, not the Co-op, retained control of the common area "and any extensions thereof," including the breezeway. Further, under its lease with Nob Hill, the Co-op was not permitted to make any alterations, additions, or improvements to the premises or any part of the premises without first obtaining Nob Hill's written consent. Therefore, Mr. Carter's suggested

8

additions and alterations were within Nob Hill's control and discretion. To the extent that Mr. Carter offered any opinions as to safety measures that might have been taken by the Co-op without Nob Hill's consent and outside of Nob Hill's control and discretion, we agree with the district court's determination that they were common sense suggestions. For example, Mr. Carter suggested that the Co-op could have used a spotter when the door was being opened or that it could have refrained from using the door at all. Therefore, Mr. Carter's testimony was properly excluded as to the Co-op. *See Mott v. Sun Country Garden Prods., Inc.*, 120 N.M. 261, 269, 901 P.2d 192, 200 (Ct. App. 1995) (recognizing that "it is error to allow an expert to testify on a routine inference that jurors could draw for themselves"). On remand, Mr. Carter should be permitted to testify as an expert in regard to safety only as to Nob Hill in terms of what Nob Hill could have done, if anything, to make the breezeway safer for guests of the shopping center.

**Other Evidentiary Issues**

"Admission or exclusion of evidence is a matter within the discretion of the trial court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citation omitted). "An abuse of discretion occurs where the court's ruling is clearly against the logic and

effect of the facts and circumstances before the court." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 60, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citation omitted).

Plaintiff claims that the district court erred in denying his motion in limine to exclude testimony of his former employers for the purpose of attacking his credibility. He contends that the testimony of his former employers was more prejudicial than probative and that it should have been excluded under Rule 11-608(B) NMRA, which prohibits the use of extrinsic evidence to prove a witness's character for truthfulness or untruthfulness.

The court ruled that Plaintiff's former employers could testify as to Plaintiff's character for truthfulness, provided there was a proper foundation. The court reasoned that testimony of Plaintiff's former employers was relevant to the extent that Plaintiff's future earnings claim was based, in part, on the assumption that Plaintiff would have continued to get construction jobs in the future, because if future employers checked his references, they would hear from past employers regarding whether he was a good employee.

Three of Plaintiff's prior employers testified at trial: Larry Chavez, Tom Tedford, and William Peterson. Although Plaintiff broadly asserts that the district court erred in allowing the testimony of former employers, he makes specific

arguments only as to Mr. Chavez and Mr. Tedford. We conclude that the testimony of Plaintiff's former employers was properly admitted for purposes other than attacking his character under Rule 11-608(B).

Plaintiff appears to have made a strategic decision to address his employment history by testifying about it on direct examination. On direct examination, Plaintiff admitted having been fired from Star Light Construction, a company owned by Mr. Chavez. By choosing to testify on direct examination about his employment history, Plaintiff opened the door to cross-examination on the matter. *See Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 624, 698 P.2d 887, 897 (Ct. App. 1985) (stating that "[c]ross-examination extends to matters that may modify, supplement, contradict, rebut[,] or make clearer the facts testified to in chief by the witness on direct examination"). On cross-examination, Plaintiff denied having been terminated by Star Light for having used company crews and company equipment for his own personal benefit. Plaintiff having testified both on direct examination and cross-examination about his termination from Star Light Construction, the Co-op was properly permitted to present witnesses, to correct any false impressions created by his testimony. *See State v. Hernandez*, 1999-NMCA-105, ¶ 16, 127 N.M. 769, 987 P.2d 1156 (explaining that "a witness may not make false claims, leaving a misimpression with the fact-finder, and expect to be insulated from proof to the contrary, even if that proof

11

encompasses evidence of misconduct"). The Co-op presented its witness, Mr. Chavez, who testified that he had fired Plaintiff for using Star Light personnel and equipment to do side jobs for Star Light customers. Because Plaintiff opened the door to testimony in regard to his termination from Star Light Construction, we see no basis on which to conclude that the district court erred in admitting Mr. Chavez's testimony.

The Co-op argues that Mr. Tedford's testimony was admissible to prove prior inconsistent statements under Rule 11-613(B) NMRA. Under that rule, prior inconsistent statements are admissible through extrinsic evidence provided that the evidence in question is substantively inconsistent with trial testimony. *See State v. Varela*, 1999-NMSC-045, ¶ 36, 128 N.M. 454, 993 P.2d 1280.

On direct examination, Plaintiff twice referenced his employment with the FAA. First, he testified that he worked as an air traffic controller and that he resigned from the FAA in 1996 because the job was stressful. Second, Plaintiff testified that Mr. Tedford found him appealing as an employee because Plaintiff had worked as an air traffic controller. Plaintiff also testified on direct examination that he resigned from his position in Mr. Tedford's company after having become sick from working with chemicals and that his doctors could not pinpoint the cause of his illness, but that they had considered, at one point, that he might have fibromyalgia, although he was "never diagnosed with anything." On cross-examination, counsel for the Co-op asked

12

Plaintiff, "Did you ever tell Tom Tedford that you were fired from the Federal Aviation Administration?" Plaintiff responded, "Absolutely not." On cross-examination, counsel for the Co-op also elicited testimony from Plaintiff regarding fibromyalgia, and Plaintiff testified that he was never diagnosed with that disease. The Co-op called Mr. Tedford as a witness. Mr. Tedford testified that Plaintiff told him that he had been fired from the FAA. Mr. Tedford also testified that Plaintiff told him that "he believed he had a fibromyalgia condition[.]"

Under these circumstances, the Co-op was permitted to use extrinsic evidence to impeach Plaintiff's credibility under Rule 11-613(B). *See id.* (stating that if the witness has been "afforded an opportunity to explain or deny" a prior inconsistent statement, extrinsic evidence of the prior inconsistent statement is admissible); *State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804 (recognizing that "the credibility of a witness is subject to an attack by proof that the witness on a previous occasion has made statements inconsistent with his present testimony" (internal quotation marks and citation omitted)).

As to Plaintiff's contention that the prior inconsistency should have been excluded because it was too remote, there is nothing in Rule 11-613 that limits the time within which a prior inconsistent statement was made for it to be admissible; therefore, remoteness does not provide grounds for reversal. *See State v. McFerran*,

13

80 N.M. 622, 629, 459 P.2d 148, 155 (Ct. App. 1969) (rejecting the defendant's contention that questioning regarding prior convictions was prejudicial because they were too remote to have any probative value, because the applicable statute did not limit questioning about prior convictions to a specified period of time prior to when the question was asked). Moreover, Plaintiff's remoteness argument is unavailing because he opened the door to questions regarding his employment with the FAA by raising it on direct examination. *Cf. Hernandez*, 1999-NMCA-105, ¶¶ 4, 18 (holding that once the defendant had testified that he had refrained from drinking for two years and that his fights with his former girlfriend were not drinking-related, he opened the door for the prosecution to explore the defendant's drinking history). Admission of Mr. Tedford's testimony was not in error.

In a motion in limine prior to trial, Plaintiff raised the issue of the testimony of former employers being more prejudicial than probative. In that motion, Plaintiff objected to the court allowing ten former employers to testify, explaining that "Defendants have represented that each of these witnesses will have something negative to say about [Plaintiff]." He further argued that he expected Defendants to attempt to elicit testimony from the former employers as to whether they thought Plaintiff had done something fraudulent and to testify that they did "not like" Plaintiff. That testimony, Plaintiff contended, "would have no probative value but would raise

the danger of unfair prejudice" and would lead to confusion of the issues and mislead the jury. Plaintiff's motion did not make specific arguments as to how the testimony of Mr. Tedford, Mr. Chavez, or Mr. Peterson would be more prejudicial than probative, and Plaintiff concedes that the district court did not make a ruling in that regard. Moreover, during trial, with the exception of the remoteness objection that we have already discussed, Plaintiff failed to raise any objection to the testimony of his former employers. Therefore, Plaintiff's argument to this Court that the testimony of Mr. Tedford, Mr. Chavez, and Mr. Peterson was more prejudicial than probative was not preserved for our review, and we will not examine it further. *See Alcantar v. Sanchez*, 2011-NMCA-073, ¶ 59, 150 N.M. 146, 257 P.3d 966 ("To preserve an issue for appeal, a party must clearly raise the issue in the lower court by invoking a ruling from the court on the question." (internal quotation marks and citation omitted)).

Plaintiff further claims that the district court erred in admitting testimony concerning his former income tax problems. Plaintiff adds that, during cross-examination, the Co-op "chose to spend so much time on the issue" of his prior tax problems that the unfairly prejudicial testimony was highlighted for the jury.

The record reflects that Plaintiff raised the issue of his failure to file tax returns by his own testimony on direct examination. By raising the issue on direct examination, Plaintiff opened the door to cross-examination on the issue. *See*

15

*Jaramillo*, 102 N.M. at 624, 698 P.2d at 897 ("Cross-examination extends to matters that may modify, supplement, contradict, rebut[,] or make clearer the facts testified to in chief by the witness on direct examination."). The court did not err in permitting the Co-op to cross-examine Plaintiff regarding his tax issues. *Cf. State v. Andrade*, 1998-NMCA-031, ¶ 21, 124 N.M. 690, 954 P.2d 755 (stating that, given the fact that the defendant opened the door regarding prior violent episodes between himself and the victim, he could not be heard to complain that the prosecution questioned him regarding the details).

The record further reflects that Plaintiff made no objections at trial to any of the Co-op's questions regarding his tax filings, which he now claims on appeal were both confusing to the jury and were more prejudicial than probative. Because Plaintiff failed to raise any objection at trial to the nature or extent of the Co-op's cross-examination, the court did not have an opportunity to make an intelligent ruling on the issue of whether the evidence was confusing or overly prejudicial, and therefore, the issue was not preserved for our review. *See Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791 ("In order to preserve an issue for appeal, [a party] must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allow[ed] the district court to make an intelligent ruling thereon."). Owing to the fact that Plaintiff

opened the door to cross-examination of his prior tax issues, and later failed to object to the extent of the Co-op's cross-examination on the issue, we see no basis for reversal.

**Directed Verdict in Favor of Nob Hill**

Plaintiff argues that the district court erred in granting a directed verdict in favor of Nob Hill on the claim of negligence because the accident occurred in a common area and, as landlord, Nob Hill had a duty to use reasonable care to make common areas safe and that a jury could have found that Nob Hill breached its duty. We review de novo the propriety of the district court's ruling on a motion for directed verdict. *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 36, 143 N.M. 740, 182 P.3d 121. In reviewing the district court's ruling on a motion for directed verdict, we resolve conflicts in the evidence, including all reasonable interpretations of the evidence in favor of the party that resisted the directed verdict. *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 87, 150 N.M. 283, 258 P.3d 1075. "A plaintiff may not be deprived of a jury determination simply because the possibility of a recovery may appear remote; rather, a directed verdict is proper only when there is no pretense of a prima facie case." *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 155, 824 P.2d 293, 295 (1992).

In a negligence action, before the jury can resolve any factual questions, such as breach, the court must first define the nature and scope of a defendant's duty of care. *Provencio v. Wenrich*, 2011-NMSC-036, ¶ 16, 150 N.M. 457, 261 P.3d 1089; *see Bassett v. Sheehan*, 2008-NMCA-072, ¶ 9, 144 N.M. 178, 184 P.3d 1072 ("Breach of duty is generally a question to be decided by the fact-finder."). Here, the district court defined the nature of Nob Hill's duty as being one of reasonable care. The scope of that duty, the district court determined, was to provide a working door that met code and to keep the common area of the ground outside of the doorway clean and free from debris. Applying that standard, the district court determined that "there [was] no way to conclude that Nob Hill failed to meet [its] duty of reasonable care[.]" Additionally, the district court held that "[i]t would be unreasonable to conclude that Nob Hill could have micro[-]managed the [Co-op's] employees . . . [by instructing them about] how to open the door" in question. Accordingly, the court granted Nob Hill's motion for a directed verdict.

We begin our analysis by looking at the facts most favorable to Plaintiff. *Klopp*, 113 N.M. at 155, 824 P.2d at 295. Plaintiff presented evidence that he was walking through the breezeway, holding hands with Lisa, his life partner. As they passed the doorway, he heard a loud noise, and the door "exploded open," and hit Plaintiff. The impact was "very, very heavy" and knocked Plaintiff across Lisa's steps

and caused him to stumble. Also, Plaintiff presented testimony from John Sedberry, the manager and part-owner of Nob Hill. Mr. Sedberry testified that, as the landlord, his company managed the common areas of the property, and it was responsible for keeping the environment safe, including the breezeways. Likewise, Mr. Sedberry testified that his company was responsible for common-area signage and lights. Further, through Mr. Sedberry, Plaintiff presented evidence that, under its lease with the Co-op, Nob Hill had the right to make changes to and enforce rules and regulations within the common areas. Mr. Sedberry recognized that the breezeway was a high-traffic area.

The existence of a tort duty in any given situation is a policy question that is "answered by reference to legal precedent, statutes, and other principles of law." *Tafoya v. Rael*, 2008-NMSC-057, ¶ 14, 145 N.M. 4, 193 P.3d 551 (internal quotation marks and citation omitted). Plaintiff argues that neither the Uniform Jury Instruction pertaining to negligence, UJI 13-1309 NMRA, nor New Mexico case law "limit[] the duty of the landlord to keeping the ground clean and free of debris." He contends that the duty of a landlord "is much more broad[] and requires the landlord to use reasonable care to keep common areas safe."

The cases cited to this Court by Plaintiff share in common recitation of two basic principles: (1) that there exists a duty for owners and occupiers of premises to

19

exercise reasonable or ordinary care to keep the premises safe, and (2) that duty includes safeguarding visitors from dangerous conditions of which the owner or occupier could reasonably anticipate would cause harm to visitors. *See Klopp*, 113 N.M. at 159, 824 P.2d at 299 (stating that "with respect to an obviously dangerous condition of which the occupier of the premises has knowledge, or has reason to know, the occupier has a duty to use ordinary care to keep the premises safe"); *Calkins v. Cox Estates*, 110 N.M. 59, 63, 792 P.2d 36, 40 (1990) (stating that a landlord has a duty to maintain common areas in a reasonably safe condition for the use of the tenants and recognizing a duty to repair if a "reasonably prudent person would anticipate a risk to safety"); *Monett v. Dona Ana Cnty. Sheriff's Posse*, 114 N.M. 452, 458, 840 P.2d 599, 605 (Ct. App. 1992) (stating that an owner owes a business visitor a duty to use ordinary care to keep the premises safe and a duty to safeguard business visitors to whom harm is reasonably foreseeable by an avoidable, dangerous condition). Thus, our precedent does not support the district court's holding that Nob Hill's duty was limited to providing a working door that met code and keeping the ground free of debris.

Rather, the scope of Nob Hill's duty entailed keeping common areas safe and free from reasonably foreseeable safety risks. The question of whether Nob Hill breached that duty was a factual inquiry and should have been resolved by the jury

with or without Mr. Carter's testimony. *See Klopp*, 113 N.M. at 158-59, 162, 824 P.2d at 298-99, 302 (holding that "it is for the jury to decide in virtually every case whether a dangerous condition on the premises involved an unreasonable risk of danger to a business visitor" and reversing a directed verdict in favor of the owner of a commercial premises (internal quotation marks omitted)); *Calkins*, 110 N.M. at 65-66, 792 P.2d at 42-43 (remanding for the jury to determine whether the landlord breached his duty of care in maintaining the common area in a reasonably safe condition); *Monett*, 114 N.M. at 459, 840 P.2d at 606 (reversing summary judgment on behalf of one of the defendants and remanding for trial on the question of whether an accident that occurred at the entranceway of a rodeo was foreseeable and whether ordinary care was used in setting up the configuration of the entranceway).

We recognize that Mr. Sedberry testified that among the members of his staff who inspect the property "routinely and daily" are three engineers, a security company, and a commercial property maintenance company, all of whom try to identify any potential issues on the property. He also testified that the door, which met code, had been safely operated for twenty-two years and that he had never been made aware of any concerns or injuries associated with the breezeway. As this Court explained in *Monett*, however, "previous accidents are not required to put an occupier of premises on notice of a dangerous or defective condition." 114 N.M. at 459, 840

21

P.2d at 606. The question of whether a guest of Nob Hill could have been hit by the door within the breezeway and whether Nob Hill could have taken measures to make the breezeway safer were questions of fact for the jury to decide. *See id.* (holding that it was a question of fact for the jury to determine whether a collision at the entranceway between the plaintiff and a golf cart was foreseeable to the occupier of the premises, given the configuration of the entranceway, the traffic pattern, and congestion in the area).

The district court erred in granting a directed verdict as to Nob Hill. This was not a case in which there was "no pretense of a prima facie case." *Klopp*, 113 N.M. at 155, 824 P.2d at 295. It is undisputed that Nob Hill maintained control over the breezeway. Plaintiff presented evidence that he was injured when he was struck by a door that opened into the "high-traffic" breezeway. Had the district court admitted Mr. Carter's expert testimony, or if from other evidence, the jury could reasonably have inferred negligent conduct, Plaintiff may have succeeded in proving to the jury that Nob Hill was negligent in failing to take safety precautions and that such negligence proximately caused Plaintiff's injuries. Thus, a jury might reasonably have determined that Nob Hill breached its duty of care. The directed verdict in favor of Nob Hill is reversed, and the issue of whether Nob Hill was negligent is remanded for re-trial.

Nob Hill's additional arguments regarding its lack of responsibility for the Co-op's employees or the store room door are unavailing. As authority for its arguments, Nob Hill cites cases which have held that a landlord is not responsible for leased premises. *See, e.g.*, *Gabaldon v. Erisa Mortg. Co.*, 1999-NMSC-039, ¶ 30, 128 N.M. 84, 990 P.2d 197 (stating that landlords are not responsible for what takes place on land they do not possess and do not have a right to control); *Gourdi v. Berkelo*, 1996-NMSC-076, ¶ 15, 122 N.M. 675, 930 P.2d 812 (stating that a landlord, who relinquished the right to possession of a premises, is not in the best position to discover and remedy a dangerous condition); *Calkins*, 110 N.M. at 63, 792 P.2d at 40 (stating that a landlord is not under an affirmative obligation to inspect or maintain those areas over which control has been relinquished). The issue of Nob Hill's duty is centered on the design and maintenance of the breezeway, over which it had control, and not on the issue of whether it had control over the employees of the Co-op or over the Co-op's manner of use of its leased premises. Therefore, any argument or authority pertaining to a landlord's duty to monitor or inspect the tenant's use of leased property is unpersuasive.

Finally, we reject Nob Hill's contention that reversal of the directed verdict would be improper because the jury found in favor of the Co-op. Nob Hill argues that the jury's verdict would have been the same regardless of whether it had remained a

23

party to the case because Plaintiff's claims against both Defendants "were contingent upon the same legal and factual determinations." We are not persuaded.

Whether the verdict would have been the same is speculative. The record reflects that Plaintiff's theory of the case differed with regard to each Defendant. His focus with regard to Nob Hill was on its duty to ensure the safety of the common area. His focus concerning the Co-op was on its duty to exercise ordinary care in training or supervising its employees with regard to the use of the door. And the expert's testimony, though not helpful to Plaintiff in his claim against the Co-op, may nevertheless have been helpful to Plaintiff in his claim against Nob Hill. Moreover, Nob Hill has not provided any authority to suggest that a finding in favor of the tenant precludes a finding against the landlord in terms of duty with regard to common areas. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue and will assume that no such authority exists).

**CONCLUSION**

For the reasons stated in this Opinion, we affirm the verdict and judgment of the district court as to the Co-op. We reverse the district court's directed verdict in favor of Nob Hill and remand to the district court for re-trial.

**IT IS SO ORDERED.**

24

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**MICHAEL E. VIGIL, Judge**